UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TORIE B.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-381 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Torie B., on October 11, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Torie B., filed an application for Disability Insurance Benefits on July 2, 2015, alleging a disability onset date of August 17, 2013. (Tr. 16). The Disability Determination Bureau denied Torie B.'s application initially on August 11, 2015, and again upon reconsideration on December 21, 2015. (Tr. 16). Torie B. subsequently filed a timely request for a hearing on February 9, 2016. (Tr. 16). A hearing was held on July 14, 2017, before Administrative Law Judge (ALJ) Trina Moore, and the ALJ issued an unfavorable decision on November 21, 2017. (Tr. 16-25). Vocational Expert (VE) Stephanie Archer appeared at the hearing. (Tr. 16). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Torie B. last met the insured status requirements of the Social Security Act on June 30,

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

2016. (Tr. 18). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Torie B. had not engaged in substantial gainful activity during the period from her alleged onset date of August 17, 2013 through her date last insured of June 30, 2016. (Tr. 18).

At step two, the ALJ determined that Torie B. had the following severe impairments: chronic hypertension, cardiac arrhythmia, breast cancer/ductal carcinoma in situ (DCIS), fibrocystic breast disease/breast fibroadenoma, asthma, degenerative disc disease of the lumbar spine, and obesity. (Tr. 18). The ALJ found that the above medically determinable impairments significantly limited Torie B.'s ability to perform basic work activities. (Tr. 18).

Torie B. also alleged disability due to her chronic migraines and insomnia with observed sleep apnea. (Tr. 18). However, the ALJ indicated that Torie B.'s migraines and insomnia were well-controlled and caused no more than a minimal limitation on her ability to engage in basic work activities. (Tr. 19). Furthermore, the ALJ determined that Torie B.'s anxiety did not cause more than a minimal limitation on her ability to engage in basic work activities. (Tr. 19). The ALJ found that Torie B. experienced mild limitations in understanding, remembering, or applying information; a mild limitation interacting with others; mild limitations concentrating, persisting, or maintaining pace; and no limitations adapting or managing herself. (Tr. 19). The ALJ concluded that because Torie B.'s anxiety caused no more than a mild limitation in any of the functional areas it was non-severe. (Tr. 19).

At step three, the ALJ concluded that Torie B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ indicated that no treating physician or examining physician indicated diagnostic findings that satisfied any listed

impairment. (Tr. 20). The ALJ also considered Torie B.'s obesity in conjunction with her severe impairments. (Tr. 20). However, the ALJ determined that none of the listings were met. (Tr. 20).

After consideration of the entire record, the ALJ then assessed Torie B.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with: occasional reaching with the right upper extremity; no overhead reaching; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; utilizing a hand held assistive device for walking; occasional stooping, crouching, kneeling, crawling; and avoiding concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases.

(Tr. 20). The ALJ explained that in considering Torie B.'s symptoms she followed a two-step process. (Tr. 21). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Torie B.'s pain or other symptoms. (Tr. 21). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Torie B.'s functioning. (Tr. 21).

After considering the evidence, the ALJ found that Torie B.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 21). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 21). The ALJ assigned little weight to the opinions of the State agency medical consultants, treating physician Dr. Okechi Nwabara, M.D., and the third-party function report submitted by Torie B.'s brother. (Tr. 23).

At step four, the ALJ found that Torie B. was unable to perform any past relevant work.

3

(Tr. 23). Considering Torie B.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including rental clerk (52,000 jobs nationally) and sandwich board carrier (1,300 jobs nationally). (Tr. 24). The ALJ found that Torie B. had not been under a disability, as defined in the Social Security Act, from August 17, 2013 through June 30, 2016. (Tr. 24).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is

4

unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits

applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Torie B. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In her appeal, Torie B. has argued that the ALJ's RFC was not based upon substantial evidence.

Torie B. contends that the ALJ's RFC finding was not supported by substantial evidence because the ALJ improperly weighed the medical opinion evidence, did not consider the combined effects of her impairments, and did not properly consider her subjective allegations pursuant to SSR 16-3p. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." **Young v. Barnhart**, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." **Craft v. Astrue***, 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

First, Torie B. has argued that the ALJ improperly rejected the opinions of her treating physician, Dr. Okechi Nwabara. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see*

*Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must minimally articulate her reasons for crediting or rejecting evidence of disability. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004).

An ALJ first must determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where she applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ must use these factors to determine exactly what weight to assign to the opinion. These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area. The court acknowledges that an ALJ need not explicitly

8

mention every factor, so long as her decision shows that she "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ found that Dr. Nwabara's opinions were "simply not supported by the evidence of record." (Tr. 23). First, the ALJ stated that the diagnostic imaging and testing of Torie B.'s heart, lungs, and back were all relatively benign. Next, the ALJ indicated that it appeared that Torie B.'s breast cancer was treated successfully. Third, the ALJ concluded that Torie B.'s physical examinations were essentially normal. Finally, the ALJ noted that Torie B. routinely denied any symptoms related to her impairments. The ALJ also indicated that the determination of disability was reserved for the Commissioner. For those reasons, the ALJ assigned little weight to the opinions of Dr. Nwabara.

The ALJ in discussing what weight she assigned to Dr. Nwabara's opinions used rather broad descriptions like the diagnostic imaging and testing was "relatively benign", "appears [Torie B's] breast cancer was successfully treated", and her physical examination were "essentially normal". (Tr. 23). Furthermore, the ALJ cited entire exhibits containing hundreds of pages of medical evidence. (Tr. 23, citing Exhibits 4F; 5F; 7F; 12F; 14F; 45F; 31F; 2F-13F; 10F-13F; 15F; 16F; 19F-21F; 24F; 31F; 40F; 41F; 2F-5F; 7F-13F; 15F; 16F; 21F; 31F; 40F; 41F). In support of the ALJ's decision, the Commissioner has cited to specific pages of the Exhibits. However, the court is limited only to the reasons provided in the ALJ's decision. The court cannot assume that the ALJ relied on the portions of the record cited by the Commissioner.

The parties have agreed that the medical evidence in the instant matter was extensive, spanning over 1,891 pages. The court recognizes that an extensive medical record, such as this one, may produce some evidence that supports the ALJ's decision and some that does not. Therefore, the ALJ erred by failing to articulate her analysis of the evidence allowing the court to

9

trace her path of reasoning. *See* **Diaz v. Chater,** 55 F.3d 300, 307–08 (7th Cir. 1995) (The ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning ... [and] [a]n ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required.") (citations omitted). Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," **Knight v. Chater,** 55 F.3d 309, 314 (7th Cir. 1995) (citing **20 C.F.R. § 404.1527(c)**) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and [her] conclusions." ***O'Connor-Spinner v. Astrue,*** 627 F.3d 614, 618 (7th Cir. 2010). Because the ALJ has cited to extensive amounts of evidence in general, the court is unable to discern the specific basis for her decision. Accordingly, the ALJ has failed to give good reasons for declining to give Dr. Nwabara's opinions controlling weight.

Moreover, Torie B. has argued that the ALJ impermissibly "played doctor" by giving all the medical opinions little weight and arguably leaving no medical opinion to rely upon as evidence for the RFC finding. The ALJ assigned little weight to the opinions of Dr. Nwabara, the State agency medical consultants, and the third-party function report completed by Torie B.'s brother. The ALJ indicated that the State agency consultants' opinions were entitled to little weight because evidence was submitted after their opinions were given. (Tr. 22). Thus, the agency consultants did not have the benefit of reviewing the entire record. Furthermore, the ALJ found that Torie B.'s brother was not an "acceptable medical source" and that there was "simply insufficient evidence to support his contentions." (Tr. 23).

A determination of a claimant's RFC is a matter, not for the treating or examining physicians, but for the ALJ alone. **Thomas v. Colvin,** 745 F.3d 802, 808 (7th Cir. 2014). However, the court cannot determine the evidentiary basis on which the ALJ based her

determination of Torie B.'s work-related ability or determine how the ALJ reached her decision regarding the RFC. *See* **Rhode v. Saul,** 2019 WL 3928712, at *2 (N.D. Ind. 2019) ("The ALJ did not identify *any* medical opinion to which he gave more than little weight, leaving the Court completely unable to determine the medical opinion evidence on which the ALJ based his determination of Plaintiff's work-related ability or determine how the ALJ reached his decision regarding Plaintiff's RFC."). Although the ALJ addressed the medical evidence throughout her decision, she has failed to build a logical bridge in this case raising concerns that she substituted her own medical judgment for that of the only treating physician opinion she discussed. *See, e.g.,* **Blakes v. Barnhart,** 331 F.3d 565, 570 (7th Cir. 2003) (warning ALJs to avoid the temptation of playing doctor and advising ALJs to rely on expert opinions); **Rohan v. Chater,** 98 F.3d 966, 970 (7th Cir. 1996) (explaining that ALJs must avoid making their own medical findings). The ALJ was required to rely on medical experts rather than "determining the significance of particular medical findings [herself]." **Moon v. Colvin,** 763 F.3d 718, 722 (7th Cir. 2014).

Next, Torie B. has argued that the ALJ did not properly consider all of her impairments in formulating the RFC. The ALJ should consider all impairments, even if they are non-severe, in the RFC analysis. *See* **20 C.F.R. § 404.1545(a)(1)** ("We will assess your residual functional capacity based on *all* the relevant evidence in your case record.") (emphasis added). Moreover, even if "the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." **Denton v. Astrue,** 596 F.3d 419, 423 (7th Cir. 2010).

Torie B. contends that the ALJ found that her hypertension was a severe impairment but failed to explain how the limitations in the RFC accounted for that severe impairment. Moreover, Torie B. asserts that the ALJ did not consider the effects of her headaches and

11

insomnia, in combination with all her impairments, in determining the RFC. The ALJ found that Torie B.'s chronic migraines and insomnia were not severe impairments because they were well-controlled and caused no more than a minimal limitation. (Tr. 19). The ALJ's decision stated, "the undersigned has considered all medically determinable impairments, in combination, when assessing the claimant's residual functional capacity and when determining whether her impairments met or medically equaled a listed impairment." (Tr. 19). However, other than providing a summary of the extensive medical record, the ALJ did not discuss what evidence she relied on in support of the RFC finding.

Finally, Torie B. has argued that the ALJ did not provide a coherent analysis under SSR 16-3p. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue***, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013). The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the claimant's daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of medications, and any other measures the claimant takes to relieve symptoms. *See* **20 C.F.R. § 404.1529(c)(3).**

The ALJ stated that Torie B.'s medically determinable impairments reasonably could be expected to cause the alleged symptoms, "however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." (Tr. 21). Nowhere in the ALJ's decision does she explain the reasons for not crediting Torie B.'s allegations. Rather, the decision consists of a recitation of Torie B.'s allegations, followed by

the above statement, then concludes with a recitation of the medical evidence. (Tr. 21-22). On remand, the ALJ should perform the required analysis under SSR 16-3p. Accordingly, the RFC was not supported by substantial evidence and remand is appropriate.

Torie B. has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 1st day of November, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge